May it please the Court. Brian Matsui at Morrison & Forrester on behalf of plaintiffs. I would like to reserve five minutes of my time for rebuttal, if I can. In dismissing this case, the District Court disregarded significant allegations of abuse, neglect, the denial of medical care, and the failure to comply with several Federal laws that require defendants to provide certain rights to plaintiffs. The District Court sidestepped these allegations only by applying a flawed qualified immunity analysis. That decision is wrong for three reasons. First, qualified immunity is unavailable in the statutory causes of actions because a reasonable official in defendant's shoes would have known that that conduct violated the law. And in each of the statutes at issue, Congress has created a Federal right that is enforceable under Section 1983. The specific statutory provisions at issue here contain the same rights-creating language that this Court found sufficient in its post-Gonzaga decisions of ASW, Wagner, Price, and Watson. Second, the District Court is wrong that plaintiffs' substantive due process rights are not clearly established. As this Court recently recognized in Tomas, since 1992, foster children, once they're in the custody of the state, have a protected liberty interest in reasonable safety and adequate medical care based upon the particular age and circumstances of the child. That is the precise interest that plaintiffs assert in this case. And the complaint is replete with allegations that defendants violated that standard, all of which were ignored by the District Court. Third, and contrary to the District Court's ruling, the county and claims for injunctive relief are not subject to qualified immunity. I'd like to first turn to the statutory causes of action under 1983 and turn first to the causes of actions under the Child Welfare Act, specifically Counts 3 and Counts 8 of our complaint, which were dismissed, alleging violations of the case plan provisions and the District Court made several errors when it dismissed these very important federal rights. If I could just step back and explain why these rights are very important, when you have foster care children that are put in the custody of the state, you need to set up right away what's going to happen with them. And that's what Congress mandated to occur with respect to the case plan provisions. These provisions need to demonstrate where the child should go, what the child's needs are, and what the ultimate goal is for the child. If you ---- What was the Court's reason for dismissing these claims? The Court found that they didn't satisfy ñ well, the main reason was a flawed qualified immunity analysis in which the Court said it's not clearly established that an official would know that they could be liable under these types of provisions. But that's not the proper test for qualified immunity when you have these statutory causes of action. The question is whether or not the official would know that their conduct violated the law, which is very clear that in these statutory terms it would violate the law not to do that. So it went through a qualified immunity analysis and it sort of went through a blessing as clarified by Gonzaga v. Doe analysis, but didn't entirely complete that analysis because it found that it was sufficient to determine that, well, if it's in the district court's opinion a close decision, then qualified immunity applies. But this Court's decision in Ng says that the question is just whether the official would know that their conduct violated the law. But the district court with respect to the Child Welfare Act provisions, the records provisions and the case plans provisions, it really just ignored this Court's decisions in ASW and Wagner, which had, which focused on very similar rights-creating language. With respect to the first blessing prong, for example, the language in the case plan provision at Section 671 and the records provision at Section 622 both satisfy that first prong. They say that you need to have a case plan for each child. That's the same language that this Court relied upon in Wagner to find that the first prong of blessing, as clarified by Gonzaga, was satisfied. Similarly, these are not vague or amorphous rights. It's very, it's common sense that when a child is in the custody and care of the State that you need to provide them with records, so provide the foster, the people, the caregivers with records so they know how to take care of the kids. And that's what Congress has required at 622 and Section 675, Paragraph 5. That's something that federal courts can easily apply. Similarly, in Section 675.1 with respect to the case plan provisions, the statute sets forth a number of enumerated requirements that must be met. And that's something that is also clearly within judicial competence. But significantly, for over half the kids within Clark County, and for the plaintiffs, the named plaintiffs in this case, there is no case plan. And so that is certainly something that the courts can enforce. You know, finally, these provisions are stated in very mandatory language. It uses the term shall. I'm sorry. I'm having difficulty hearing your voice drops. I'm sorry. I apologize for that, Your Honor. With respect to the third blessing prong, these statutes are very much phrased in mandatory, not discretionary language. They dictate that the state shall have a plan approved that requires that a case plan be in place for every child. I'd also like to turn to the provisions that we assert under the CAPTA statute for early intervention services and the guardian ad litem provisions. Those provisions also contain very similar rights-creating language that this court has used. And I'm wondering if you could talk a little more generally about those provisions, right? I don't believe so, Your Honor. I mean, with respect to the first blessing prong, it focuses on the individual rights. With respect to the early intervention provisions, it focuses on a child under the age of 3 who is involved in a substantiated case of child abuse or neglect.  Similarly, the guardian ad litem provision says in every case involving a victim of abuse or neglect which results in a judicial proceeding, a guardian ad litem must be appointed. And the provision also focuses on the child in subsequent paragraphs of the section. And this court in ASW focused on very similar language with respect to using the child language to find that you have an individualized right here for the particular plaintiffs that are asserting a federal right. These also are provisions that are very easy for courts to enforce. The question is whether or not a guardian ad litem has been appointed or whether or not early intervention services are being provided. That's something that's squarely within judicial competence to do. And these statutes are stated in very mandatory language. In 1996, Congress amended the CAPTA requirements to say that not only that the state not only has to provide an assurance that the state has in effect a plan that provides these services, but it also has to be enforcing the plan. That's very mandatory language that demonstrates it's not enough just to enact a statute. You have to actually be providing these services to the particular beneficiaries that are the Congress intended to have this right. I just would like to also touch upon younger abstention, because that was another ground that the district court addressed. Isn't that only relating to the guardian ad litem issue? It is. It does only relate to the guardian ad litem provision. And we don't think it's necessary for federal courts to abstain in this case. And there are three reasons for that. The first is this would not interfere with ongoing judicial proceedings. This is an action against the executive branch to make sure that they're using the federal dollars that they receive to actually provide the necessary guardian ad litem so the juvenile courts can appoint them. We don't question whether or not the juvenile courts want to do this. It's just that the executive hasn't provided those means for those guardian ad litem to be appointed. Second, there's just no indication that juvenile courts would be capable of resolving these federal claims in the juvenile courts. The juvenile courts have an entirely different purpose. And we cited a host of cases in our opening brief that showed the courts have determined that juvenile courts Are the children represented by counsel in these proceedings? It's – well, I mean, some of them would be, but some might not be. I mean, we – when you have a 3-year-old, a 5-year-old, the counsel is completely different than the guardian ad litem. The guardian ad litem is supposed to be someone who does independent investigation, that ensures that they're receiving certain benefits, that it basically So if they have a guardian ad litem, they don't have an attorney? No, I believe that they could have both. But I will – can I address that on rebuttal? And I can find the precise answer to that. But also, this Court's recent decision in E.T. does not require the Court to hold that younger abstention applies in this case. The E.T. decision, which the defendants cited in a Rule 28J letter, is very different than the case that's at issue here. In E.T., the plaintiffs sued the California judiciary. They listed as the lead plaintiff the Chief Justice of the California Supreme Court. And the remedies that were sought in that case were vastly different. It was looking at the adequacy of representation of attorneys. It was looking at the caseloads. That would have gone into core areas of what – Who appoints the guardian ad litems in these cases? The Court or the state officials or the county officials? I believe that the juvenile courts would be appointing the guardian ad litems. But under CAPTA, the state has to have a system in place where, for each child, a guardian ad litem can be appointed. And so that's why this action is against the state officials who have received federal dollars to implement this. So they don't have a CASA program? You know, Child – what is it called? Child Advocacy – what's the name? I forget the exact name. I just remember from the – it was a Child Advocate something or other? Well, I'm not certain exactly what other programs that they would have in effect. But with respect to – I mean, here we have a federal requirement that they have to appoint these individuals. And they're not doing it, which I – Well, it's different. I mean, appointment by the juvenile court judge is different than having some sort of panel available. Right. But you need – the point is that in any case that's going to lead to a juvenile proceedings, these provisions are clear that there's a federal right for the child to have a guardian ad litem appointed. And that's just not occurring because the state hasn't provided the necessary resources or training. So it's not the judge. It's the state? Yes, because – So the judges can't – there are no guardian ad litems available for the judges to appoint? Is that what you're saying? That is correct, Your Honor. Are you saying that there are guardian ad litems available? It's just that the judges aren't making that point. No. It's the point that the – I'm sorry if I wasn't clear there. The point is that there are not guardian ad litem available to be appointed. And that's why it's not a case like the ET one where you're looking at the sufficiency of representation or the adequacy of representation. If I could just briefly touch – sorry. Let me – I just have one area that I'd like to ask you a few questions about. And that's – you named the state defendants as well, correct? Yes, Your Honor. Yes. So getting back to your claims against those defendants, there's no allegation that they're involved in all of this activity in Clark County, is there? Well, they have direct – they do have, with respect to – they do have obligations to what goes on in Clark County. For a number of the plaintiffs before 2004, they were in direct custody of the state. So these allegations would lead directly against them. In addition – In their individual capacity or in their official capacities? Well, for – What are you seeking from the state – let me ask you this. What are you seeking from the state officials? Well, we're seeking several things. I mean, first we're seeking for them to – injunctive relief with respect to the federal causes of action that we bring under the Child Welfare Act and under CAPTA, for them to actually comply with the federal law. We are seeking damages in our substantive due process claims. So you're saying that they were personally involved, or somehow they had greater responsibilities. Yes. And we're seeking that with respect to the individual damages. So do you claim that they had some sort of supervisory role over the county officials? Yes, we do. You don't claim that they were involved in these individual particular cases. We claim that they basically had knowledge that these actions were occurring and they were deliberately indifferent to what happened to these individuals. I mean, these are – this is an alternative ground. They had information about these individual plaintiffs. Well, I think that if we look at this Court's recent decision in Starr v. Baca, they received numerous reports as to what was going on in the Clark County system. It was – they received two federal reports. They received over ten state reports. They received case review systems to evaluate what was going on. And nothing was done. And in that situation, you have a circumstance where they basically acquiesced to what was going on. And under this Court's Starr v. Baca case, that's sufficient for us to state a claim. But I just would like to say also that the district court didn't rule on that ground. And I don't think this Court should – What did the district court say about the state defendants? The district court just granted them qualified immunity. It just said this was not – with respect to the substantive due process claims, it just said this wasn't a clearly established right. But we know that that can't be the case after this Court's Tomas ruling, which recognized since 1992 this was a clearly established right for them to have the adequate medical care. So if the case would go back, is it possible that the district court could rule on a 12b-6 with respect to the – whether or not a claim under Baca has been alleged? Well, I think we satisfy that. So I think that if the district court were to address that, it would have to find that we've sufficiently alleged that claim. But, I mean, I think that even if we hadn't sufficiently alleged that claim, which I don't think is the case because I think our complaint is very good and replete with a lot of allegations here, we never were given any opportunity to file an amended complaint. It was a dismissal with prejudice. And as this Court knows, you're not supposed to dismiss with prejudice unless it would be absolutely futile with respect to amendment. And that's not the case here. I mean, I think our briefs outline very clearly how these claims are not by any means futile. If I could reserve my remaining time. Good morning. Margaret Foley for the Clark County Defendants. My co-counsel and I would like to split our time ten minutes each. Do you want us to police that? I brought my watch, so hopefully I'll be able to keep an eye on it. I'll alert you when we get to ten minutes, if I can remember. And maybe the clerk can help you. I know it's been a long morning, so I'll try and move through this. As a housekeeping matter that's actually also a substantive matter and that I have now come to realize is a jurisdictional issue that can be raised at any time, all but two of the named plaintiff children are now out of Clark County custody. The Court has a few options under cases. There was a claim here for damages, correct? There was a claim for damages, yes. I'm talking about the injunctive relief claims. We're talking about mootness. We're not really talking about jurisdiction. Well, mootness in the sense of request for declaratory relief and injunctive relief is jurisdictional standing. It's Article III standing, because once the children are out of custody, there's no redress. All but two? Yes, all but two, Your Honor. That suggests that there are two plaintiffs who are still in the system. That is correct. Why wouldn't they have standing to raise these claims? They might, but there are numerous claims made in the 75-page complaint. Some of them are class claims. Some of them are individual claims. But all this mootness stuff could go back, if it gets back to the district court, it could go back there and you could raise all these issues with the district court, and whether the claims are moot or whatnot, they could have leave to amend and add new plaintiffs. This is apparently a fluid class. Yes, there's been no class certified, but the court could do that. Another alternative under the Ninth Circuit? Why don't you turn to what the district court did? Okay. Okay. Your time is already, you already lost two minutes. I understand. We'd like to talk about the guard. It seems like the district court with the qualified immunity determination. Yes. You know, I realize qualified immunity can be difficult and whatnot and it's confusing, but I never understood that a county had the right to qualified immunity, and that's essentially what the district court said with respect to the county. They did say that. That's not right, correct? I would agree that it's not correct, yes. Yes. Correct? I would concede that, yes. However, it's not, it's harmless there. Throughout this order here. I don't disagree that there are places where the order is far from clear. I think it is sufficient, though, to be dismissed and to be affirmed, the dismissal. Why would we affirm a grant of qualified immunity to the county? There's an alternative ground that the county, there were not specific allegations that they were really named and alleged as respondent superior claims that are forbidden by Monell. Well, and I read the complaint. I didn't quite get that, that the county was in there on a respondent superior basis. There were lots of claims involving. A failure to train. Right. Which is different than respondent superior. Right. But there were, the named defendants were Virginia Valentine and Tom Morton, and there's just, there were no allegations that it went all the way up the chain to them. And they would have qualified immunity as government officials. Why don't they allege a due process? Substantive due process claims here. If you accept all their allegations as true. Yes. Why don't they all, why isn't there a substantive due process claims alleged in this complaint? Well, the district court looked at the complaint. The complaint is very detailed. I asked you, why isn't there a substantive due process? Because the way. Claims alleged in this complaint. Because the substantive due process violation would come from the standard set by DeShaney and reiterated in the Tamas case, which is that foster children are entitled to the basics, food, clothing, and shelter, and minimally adequate medical care. The complaint is very detailed and contains all sorts of allegations that go far beyond this. For example, one that Judge Jones cited was that the plaintiffs are entitled to medical services for maximum reduction of physical or mental disability as a substantive due process claim. It just, it doesn't fit with DeShaney. So it was appropriately dismissed. Well, this is on, this is with 12b-6, right? Correct. Is that what he did? 12b-6, he said, don't state a claim here under DeShaney? Yes, he did. Okay. Yes. And he specifically pointed out that there was a very high level of detail and specificity in the So then if they hadn't, so it seems like plaintiffs are caught in a trap. That is, if they only just allege very minimal information, then the county would come back and say, well, you haven't satisfied the Iqbal standard to show them that these claims are plausible. Correct? They're possibly, but I think there isn't. Then when they put too much in, they say, oh, my goodness, you can't possibly mean all of this. I don't think too much is the problem. I think that the rights asserted were very specific. Specific rather than much. And the specificity was that it stated a substantive due process claim that went far beyond the level of DeShaney. Well, DeShaney may be all good and well, but we have Federal obligations imposed because of the state and the county getting Federal funds. So I think that we have to be looking at what the requirements are for the county and the state, because they are taking Federal funds which require them to do these things for children, which seem very reasonable. Yes. Yes. And my co-counsel will discuss the private right of action claims unless you'd like her to come up and stand here with me. That's fine with me. But my point is that DeShaney, you can talk about DeShaney, but I'm not sure that it has any application here. Well, it would go to the difference between statutory rights and constitutional rights. DeShaney is the constitutional standard. Yes. But there are the statutory rights which seem to control here. And that's one of the questions that runs through this litigation. But these were alleged as constitutional substantive due process claims. Well, they had different claims. They had constitutional claims. Sure.  They had statutory claims. Sure. And in the end, the statutory claims may be easier for them to prevail on if those statutory claims are enforceable under 1983, under Blessing. Exactly. Exactly. But it is, yeah. But I just wanted to point out it was two separate questions. They also raised a state-created danger claim and ---- Substantive due process claim. Which is also a substantive due process claim, yes. Based on the Tamas case. But the Tamas case seemed to be very confined to the duty owed to a child who had already been adopted rather than was still in custody. So I don't think Tamas really states a state-created danger claim. And I don't agree with plaintiff's counsel that the qualified immunity analysis was flawed in the sense that it can't apply to a claim for which there's no private right of action. It seems logical to assume that Judge Jones was thinking that there must be a private right of action under statute for it to confer right. But then if there is no, there's no right, because there's no private right of action by definition, then there's certainly no clearly established right. And plaintiff's counsel said, you know, that the officials were on notice that this conduct was unlawful, but I don't see that as a standard here. And it looks like I'm almost out of time. One thing that I didn't ask the plaintiff about is in their brief, they asked that if we were to remand this case, that we reassign this case to another judge on remand. And like some of the comments the judge made, what do you have to say about that? I believe Judge Jones was fair and that there's no need for a reassignment. He made some pretty strong statements. He made some statements, though, that were really borne out by case law. At times he seemed almost psychic, saying, for instance, that ---- I'm very unhappy that this was brought as a class action. Correct. Lawyers from Berkeley, as he emphasized. He did call them the Berkeley Organization. It seemed like he couldn't remember their name, but he did say that. What occurs to them is actually the plaintiff. And that's ---- They're the plaintiffs. Well, and he did seem to think that they were the real party in interest in a way, and he was not happy with them, that they didn't seem to be pressing the individual claims of the named children who had experienced wrongs that were not being redressed during the pendency of the litigation. He was basically scolding plaintiff's counsel, saying, you need to pay attention to these kids' claims rather than get an amorphous class. One comment that troubled me, though, I must admit, is when he said that, you know, I guess it was in the prior case there was a possibility of a stipulation for a settlement. Oh, possible settlement. Consent decree. And he said, uh-uh. He ---- He was not inclined to approve any kind of consent decree. He was concerned with the problem of coercion, which a few weeks after that hearing, the Horn v. Flores case came out and said there's a problem in these institutional reform cases of collusion between plaintiff's counsel and the defendant departments that creates financial obligations that the citizenry and the legislative process has not approved that can bind states and municipalities for years to come. I believe that's where he was coming from. You want to give your colleague a chance? Yes. Thank you. May it please the Court, my name is Linda Anderson. Judge Hugg, I apologize if I drop my voice. I know I tend to do that sometimes. I'm here on behalf of the state defendants, Mike Wilden, who is still the Director of Health and Human Services, the only named defendant still in the matter, and Diane Como, Division of Child and Family Services Administrator. As Judge Paez pointed out, the state does not have custody of these children, did not have any direct participation in any of these cases, nor does the complaint allege that they had specific knowledge of these objective risks. What the state did have knowledge of is that there was a system that needed to be improved in Clark County. They've commissioned studies, they're continuing to work with the federal government and the county to improve that, but that's a different standard than knowing whether there are constitutional violations, and Mike Wilden or Diane Como having that direct participation. So I would agree that while there are risks for children in foster care at all time, that the constitutional violations for substantive due process were not shown for these defendants. And that's why the judge found qualified immunity and also found a failure to state a claim in the substantive due process. Would they be entitled to qualified immunity for injunctive, prospective injunctive relief? Not for injunctive relief. However, the plaintiffs still need to allege a constitutional violation against them. Or a statutory violation. Or a statutory violation. And if I can quickly address the statutory violations, the only one that's still on appeal besides the guardian litem is that case plan. And I think the parties of the case plan and case records. And case records. Case plan, I would note for the record, I think the counsel said that I had assumed that they were the same claims just for the records. When I look back at the complaint, the plaintiffs themselves, there's not one that I could find that alleged that they did not have a case plan at all. As counsel pointed out in his argument, they do state to a computerized run, which is called unity, which shows that 53% of the kids didn't have a case plan within 45 days. I'm not sure it stands for the proposition, but assuming for this motion that it did, that would not be a violation of federal law. Federal law requires a case plan within 60 days. So we don't really have a clear complaint that there was no case plan at all. All of the plaintiffs, almost all of the plaintiffs, do complain that records weren't given to their foster parents. That's the one that I assumed that they were going forward on. And I would note in both the case plan and the case review system, even though the statute talks about it being for every child, that's what you would expect Congress to do when you're creating a compilation of information and a case review system so that they can monitor what progress the State is being made. You're not actually handing a child a case plan that's going to benefit them. What it is is a tool that helps the State, the feds, monitor what progress is being made for specific children. What plaintiffs really want is that case plan to be complied with, not the actual case plan itself. So I would suggest to this Court that they were not, Congress was not intending to create a right in that area, but in fact was creating a tool that would be useful to monitor the system as a whole so they could determine substantial compliance for the federal funds. One other note that you guys had asked about was the CASA program. I'm sorry, Your Honor, that was not an appropriate term for me to use. Court-appointed special advocates are used in Clark County, and they are a program that's run by the Court, not by the county agency, not by the state agency. Plaintiffs suggest that the state and county should be training and recruiting those CASAs to come in. I think that would actually be the worst idea, because they are supposed to be independent from the county and the state. Yes, guardian ad litems are appointed, attorneys are appointed, but it's up to that judge to determine. And right now the courts don't have enough. The captive funds that are coming in are being used to try to develop and improve that. In order to receive those captive funds, we have the required law that says they have to appoint, and that's what makes us eligible to receive those funds so that we can try and improve the system and get children more guardian ad litems, which is everyone's goal. But I think the abstention argument is very clear, that the court would have to make some decisions, either to give a higher caseload to some of those guardian ad litems, which so far they have chosen not to do. And we'll continue, the state and county will continue to work to try to develop more, and I know the Supreme Court is very committed to getting a stronger CASA program in Clark County, because it is essential to a well-run system. It gives the court the information that they need. I have any other questions? Thank you so much. There are just a few points I'd briefly like to address on rebuttal. The first is I think the court's right that if any mootness issue can be addressed on remand to the district court, as defendants know, there are still two plaintiffs that are still in the custody of the state, so in that situation you still would have a live case or controversy. It wouldn't be moot. This is also a very poor case to address any alternative grounds for affirmance. As we outlined in our reply brief, the state defendants and the county defendants filed distinct motions to dismiss, and they didn't raise the same arguments, and so there are a number of arguments that this court just couldn't address with respect to some of the defendants. It's better for this to go back to the district court to decide these issues in the first instance, which we don't even think would be necessary because we stated a sufficient complaint. With respect to the statutory causes of action, I think the complaint's very clear that we raised all these statutory causes of action in our complaint. Our opening brief is very clear that we're raising claims under the case plan provisions, the record provisions, the early intervention services provisions, and the guardian ad litem requirement. I think that some of the points that the state defendants' counsel just made with respect to what percentage of individuals have case plans at any given time, well, that's a factual question, and the allegations should be allowed to be tested. Which is your position on whether we should send the case for a clear new look before another judge? I think that, I mean, we would be, I think we set forth in our opening brief and our reply brief why we think it's necessary for there to be a reassignment. I think that some of the statements that were made with respect to our co-counsel as potentially imposing California values onto the Nevada system, that's not what the case is about. The case is about federal constitutional rights and federal statutory rights that we have alleged are not being fulfilled. With respect to the fact that the district court judge in this case has basically said that he was very hostile to any form of initiative that was before the court on a motion to dismiss. And so it wasn't appropriate for the court to basically have that type of hostility to those types of claims. We think it would be very difficult for the district court on remand to sort of put aside some of the things and some of the views that the court has sort of adopted about this case. And I think that it would be much better for it to be looked at anew on remand. Is the constitutional issue really a necessary part of your case? Is our substantive due process claims? We believe that they are. I mean, there are significant horrific issues of abuse and neglect that our particular plaintiffs had suffered in this case. I mean, I think our complaint outlines in detail how some children had a need for a colonoscopy and it required emergency surgery, and there was never, ever any authorization that was given by the defendants in the case. What happened was the doctors had to say, finally, this is life-threatening, and just undertake the surgery. These are clear constitutional violations. And the types of violations that this court recognized are clearly established in the Tomas case. If there are no other questions. Thank you. I have a question. There were originally 13 children that were involved in this case, and now you tell me there are only two? That's what the state defendants have just said, that there are only two plaintiffs. They've represented to this court that there are only two plaintiffs that are still within the Clark County system. What has happened to the other 11? We have some information, but not, you know, a ton of information necessarily about everybody. But children get adopted, for example. Children can age out of the system. These are all ways that they could go out of the Clark County system. But with respect to our damages claims, they would still have live causes of action, even if they were no longer in the current custody and care. Thank you, Your Honor. Thank you, counsel. The matter is submitted.
judges: Hug, Fletcher, Paez